10524

STATE v. HOLMES.

(105 S. E. 347.)

1. HOMICIDE—INSTRUCTION AS TO MALICE REVERSIBLE ERROR.—Where defendant was convicted of murder, instruction that an unlawful act by a sane person is presumed to have been maliciously done *held* ground for reversal, since, in absence of such instruction, defendant may have been convicted merely for manslaughter.

2. CRIMINAL LAW—UNLAWFUL ACT NOT NECESSARILY MALICIOUS.—An unlawful act is not necessarily malicious.

Before WILSON, J., Aiken, Fall term, 1919. Reversed and new trial ordered.

Amos Holmes indicted for the murder of his wife, Donie Holmes, in 1903, and, upon conviction, appeals.

The following is the Judge's charge, referred to in the opinion of Chief Justice Gary:

Mr. Foreman and gentlemen of the jury: The defendant, Amos Holmes, is on trial before you on the charge of murder. The indictment charges that the murder was committed on the 21st day of February, 1903. That is a good many years ago. You have heard the evidence in regard to that, etc.

Now, murder is the killing of one person by another with malice aforethought, either expressed or implied. Malice means the wilful, intentional doing of a wrongful act. The law says that malice is the wilful, intentional doing of a wrongful act. When a sane, responsible person, not a child or maniac, but whenever a sane person commits an unlawful act, the law says that he does it maliciously. There is only one kind of malice, but two ways of expressing it, and hence you hear these terms, express malice and implied malice. There is only one kind of malice, but two ways of showing it.

How may express malice be shown? It may be shown by what a party says he is going to do; by threats or declarations. How may implied malice be shown? From the very cruelty or atrocity of the act committed, or from the character of instrument used. Whenever a homicide occurs, and it is done with a deadly weapon, the law implies malice from the nature of the weapon used. For instance, if a man kills another with a gun or pistol, in the first instance the law implies malice from the using of a deadly weapon; but that is only an implication, and when the facts come out, and it is shown that one kills another with that kind of a weapon, and yet if he did it in self-defense or accidentally,

the implication of malice is done away with, and the State has to prove malice just like any other element going to make out the charge of murder. In order to convict a party of murder, it has to be shown that it was done in malice.

The term "aforethought" does not necessarily mean that malice existed for any length of time; but the law says, if the malice was there at the time the act was committed, that that is malice aforethought.

In every charge of murder there is a lesser degree of homicide, called manslaughter. That is the felonious killing of one person by another in sudden heat and passion and upon sufficient legal provocation. It is still a felonious killing. Not only that, but done in heat and passion. Not only that, but upon sufficient legal provocation. It won't do for a man to kill another suddenly and say, "I am not guilty of murder." It must be upon sufficient legal provocation. What is sufficient legal provocation? It is some act which in the opinion of the jury would so disturb the equilibrium of a person of ordinary reason and prudence and courage that, while laboring under that passion caused by this sudden provocation, he kills his fellow man, and he is not guilty of murder, but manslaughter. A man cannot get mad with you, and kill you, and say, "I am not guilty of murder." It must be upon sufficient legal provocation. The law says we must curb our passions; but, should you get into sudden heat and passion upon sufficient legal provocation, or something calculated to arouse the passion of a person of ordinary reason and courage, and you kill, you are not guilty of murder, but of manslaughter. Manslaughter is the felonious killing of a person without malice.

Now, I understand that there is no self-defense set up in this case.

Mr. Williams: No, sir.

The State charges the defendant with committing murder, and he says that he didn't do it. Now, the State must prove its case beyond a reasonable doubt; that is, the State must prove it by what witnesses say they saw and heard, and by circumstances, and must prove it beyond a reasonable doubt. What is reasonable doubt? A doubt for which you can give a reason; not a flimsy or fanciful doubt, but a strong, substantial doubt arising in and growing out of the testimony—a doubt that will cause an honest man to hesitate. When a jury has such a doubt, they should resolve that doubt in favor of the defendant and acquit him.

If the State has not proven its case beyond a reasonable doubt, you will acquit him. If you have a reasonable doubt as to whether or not it is murder or manslaughter, you should give the defendant the benefit of that doubt, and say manslaughter, and not murder. If he is guilty of murder, and you see fit to recommend him to the mercy of the Court, that will mean life imprisonment. If you find him guilty, and do not recommend him, that will mean death in the electric chair. Your verdict will be guilty, or guilty of murder with recommendation to the mercy of the Court, or guilty of manslaughter, which means punishment of not more than 30 years, giving the defendant every reasonable doubt that you may have in this case.

Write your verdict on the back of the indictment, and sign your name as foreman.

*Mr. Jas. F. Williams,* for appellant, cites: *Proper foundation was not laid for dying declaration:* 107 S. C. 439. *Judge's charge that "every unlawful act is malicious" was erroneous:* 14 Rich. L. 253: *Not necessary that killing be feloniously done to constitute manslaughter, as mere negligence may justify manslaughter:* 111 S. C. 58.

*Mr. Robt. L. Gunter, Solicitor,* and *Mr. John Edwin Stansfield,* for respondent, cite: *General objection not sufficient ground on which to found exception as to dying dec-*

*laration:* 100 S. C. 115; 92 S. C. 171; 91 S. C. 516. *Rule as to dying declarations:* 93 S. C. 510; 87 S. C. 550. *Language used sufficient to admit declaration:* 26 S. C. 155; 25 S. C. 172. *Stronger than in 24 S. C. 189.* And exception should not be sustained, as similar testimony was introduced without objection: 91 S. C. 537; 72 S. C. 426. *Charge as to manslaughter was in accordance with 85 S. C. 66.*

December 20, 1920.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

MR. CHIEF JUSTICE GARY, *dissenting.* The defendant was tried under an indictment charging him with the murder of his wife in 1903. The jury rendered a verdict of guilty, with a recommendation to mercy, whereupon the Court imposed upon him the sentence of life imprisonment, from which he appealed.

The first exception is as follows:

(1) "His Honor erred, it is respectfully submitted, in ruling competent the alleged dying declaration by the witness, Mary Jordan, it not being made to appear that the declarant was conscious at the time when she is alleged to have made such declaration, and it not being made to appear that she realized death was impending or imminent; especially was this so when it appeared that she did not know her own baby from a hot-water bottle, and that she was in a dazed condition, and the Judge being apparently satisfied with the sufficiency of the showing when it appeared that the declarant did not get up any more after the declaration alleged to have been made by her."

A part of this exception was taken under a misapprehension of the facts, as the testimony tending to show that the wife of the defendant did not know her own baby from a hot-water bottle, and that she was in a dazed condition, related to the condition of the wife, when the witness saw

her on Sunday previous to her death. The following testimony appears in the record:

"Q. By Mr. Stansfield: State whether or not she said anything to you at that time about dying. A. Yes, sir; she said she was gone. Mr. Williams: Object. Q. By Mr. Stansfield: She said she was gone? A. Yes, sir. Mr. Williams: We object, upon the ground that a proper foundation has not been laid. The Court: How long did she live? A. She died on Friday, and that was Wednesday. Q. By Mr. Stansfield: Did she ever get up after that? A. No, sir. Mr. Williams: We object. The Court: Go ahead. Witness: She said, 'Mother, if my back was all right, I would be all right;' and I said, 'What ails your back?' and she said, 'Where he hit me across it with a board.' Q. Who was she talking about? A. Talking about Amos Holmes. Q. Aunt Mary, state whether or not if on that occasion she ˜id anything to you about not grieving about her. A. Yes, ˎ She said, 'Mother, don't let them give me nothing;' aı I said, 'Why?' and she said, 'If I am accusing him wrong, I hope God will forgive me.' She said, 'Don't grieve after me; I am gone.' "

The foregoing testimony tends to show that the wife was conscious at the time she made the declaration, and that she realized that death was imminent. · This exception is overruled.

The second and third exceptions are as follows:

(2) "His Honor erred, it is respectfully submitted, in charging the jury, 'When a sane, responsible person, not a child or maniac, but whenever a sane person commits an unlawful act, the law says that he does it maliciously'—the error being that every unlawful act is not necessarily malicious, and especially is this applicable where a man is accused of beating his wife; it may be unlawful, but not necessarily malicious; and when all the testimony is in malice must be proved beyond a reasonable doubt, and there is no presump-

tion of law that says, in such a case, that every unlawful act is malicious."

(3) "His Honor erred, it is respectfully submitted, in requiring that manslaughter, in order to be made out, must be feloniously done; whereas, manslaughter is not necessarily feloniously done or committed, in order to justify the reduction.of the killing from murder to manslaughter; but manslaughter may be found where there is no felonious intent, and such was especially prejudicial when the Judge said every unlawful act was malicious and that malice justified conviction of murder."

It is only necessary to refer to the entire charge (which will be reported) to show that it cannot be reasonably supposed that the portions thereof mentioned in the exceptions misled the jury. They are, therefore, overruled.

The fourth exception is as follows:

(4) "His Honor erred in overruling the motion for a new trial, when the inference from the testimony was that the witnesses for the State, at the coroner's inquest, placed the beating before the birth of the baby and at the trial after the birth of the baby, the testimony of Mary Jordan,. improperly admitted, getting the verdict, in the light of the charge complained of, which was urged to be error of law." ·

A motion for a new trial upon .conflicting testimony is addressed to the discretion of the presiding Judge, and is not the subject of review by this Court, unless it was erroneously exercised, which has not been made to appear in this case.

MR. JUSTICE WATTS. I think there should be a new trial. Exception 2 is: "His Honor erred, it is respectfully submitted, in charging the jury: 'When a sane, responsible person, not a child or maniac, but whenever a sane person commits an unlawful act, the law says he does it maliciously'—the error being that every unlawful act is not necessarily malicious, and especially is this appli-

cable where a man is accused of beating his wife; it may be unlawful, but not necessarily malicious; and when all the testimony is in malice must be proved beyond a reasonable doubt, that there is no presumption of law that says, in such a case, that every unlawful act is malicious."

I think this exception should be sustained, and a new trial granted, as it was harmful and prejudicial to the defendant, because the jury might have convicted him of manslaughter. An unlawful act may occur, and it is not necessarily malicious. Thus making a well defined line between murder and manslaughter. The defendant was prejudiced by this, and nowhere in his Honor's charge is this error corrected.

A majority of the Court concurring in this opinion, the judgment of the Circuit Court is reversed, and a new trial granted.

MESSRS. JUSTICES HYDRICK, FRASER and GAGE concur.